495 So.2d 943 (1986)
LOUISIANA STATE BAR ASSOCIATION
v.
Wilmer G. HINRICHS.
No. 85-B-1360.
Supreme Court of Louisiana.
October 20, 1986.
Rehearing Granted on Denial of Rehearing December 18, 1986.
*944 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, for applicant.
Wilmer G. Hinrichs, New Orleans, for respondent.
Katherine Goldman, New Orleans, Commissioner.
CALOGERO, Justice.
The Louisiana State Bar Association, appearing through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Wilmer G. Hinrichs, a member of the bar of this state for the past thirty-five years. The Committee's Petition for Disciplinary Action recited four specifications of misconduct involving the successions of Henry G. Barthel, Amy H. Hinrichs, and May E. Hinrichs. Respondent was charged with gross procrastination, neglecting legal matters entrusted to him, failing to properly perform his professional services, and failing to properly account for funds.[1]
At the time of the Commissioner's hearing, none of the three successions had been concluded. Two of them had been open since 1975, and one had been open since 1973. These are family successions, that is, successions of relatives of respondent; and apparently the successions were not large.[2] However, it is not entirely clear *945 what assets, although admittedly minimal, were denied the heirs over these many years. The Barthel succession was concluded in February, 1986, after the Commissioner's hearing, and that fact was noted in her report. It had been open almost eleven years. Presumably the Hinrichs sisters' successions have still not been concluded. Final accounts in those two successions were ordered filed by the district court judge (as a condition for permitting withdrawal of the administratrix), and those accounts have still not been filed. May Hinrichs' succession has been open and under administration for over thirteen years; Amy Hinrichs' succession has been open and under administration for almost eleven years.[3]
The Commissioner found that, in connection with the handling of the three successions, Hinrichs was guilty of gross procrastination in violation of Disciplinary Rule 1-102,[4] of neglecting a legal matter entrusted to him in violation of Disciplinary Rule 6-101(A)(3),[5] of failing to properly perform his professional services in violation of Disciplinary Rule 7-101(A)(2),[6] and of failing to properly account for funds in violation of Disciplinary Rules 1-102, 6-101(A)(3), 7-101(A)(2), and 9-102(B)(3)-(4).[7] She recommended only a four month suspension, apparently for the reasons that the successions were all family successions, that for two of the successions Hinrichs received little or no compensation for his services, and that Respondent had experienced difficulties in his family and personal life. It is distinctly worth noting that, although Respondent closed the Barthel succession after the Commissioner's hearing, the Hinrichs sisters' successions have yet to be concluded. Furthermore, Respondent has never explained his reason for his failure to do so.
Whatever the reason, interminable procrastination or otherwise, we are presented *946 with the following chronology of events in this disciplinary proceeding:
The Committee properly notified Hinrichs on November 15, 1984, that the investigatory hearing was set for December 13, 1984. At the Hearing, Hinrichs made a motion for a continuance, on the basis that he was not ready to proceed. The motion was denied. Hinrichs remained at the hearing but participated only minimally, refusing to testify or to examine witnesses. The Committee filed its Petition for Disciplinary Action in this Court on July 3, 1985. Hinrichs was notified on both September 30, 1985, and November 4, 1985, that the Commissioner's hearing would be held on November 14, 1985. The day before the scheduled date, Respondent requested an extension of time for the hearing, which was granted for a period of one week. At that hearing, Hinrichs objected to the introduction into evidence of the record from the investigatory hearing. The Commissioner gave him a week to file formal written objections and a legal memorandum supporting his objections. Respondent filed no written objections or memorandum.
In this Court he did not file a timely brief. He was notified that his case was set for argument. Three days before the scheduled date, he made a motion for a continuance, which was denied. He appeared, but did not move to be permitted to argue. As Respondent had still not filed a brief in this Court, he was given an opportunity to file a post-argument brief. He made three motions for additional time to file the post-argument brief. In connection with this Court's granting a second extension, the Court's Administrative Counsel, at this Court's direction, asked Hinrichs by letter to address the following matters in his brief:
1) [W]hether or not the succession proceedings of Amy H. Hinrichs and May E. Hinrichs have been concluded as of this time. If the succession proceedings have not been concluded, please describe the circumstances that have prevented their conclusion.
2) [W]hether the assets of the successions of Amy H. Hinrichs, May E. Hinrichs and Henry G. Barthel were properly accounted for and distributed to the heirs. This discussion should include at least a general description of the assets and their disposition.
A third motion for additional time to file a post-argument brief was denied on September 4, 1986. To this date, Respondent has not filed a brief in this Court. Thus from December 13, 1984 (Committee's investigatory hearing) through rendition of our opinion this date, Respondent has repeatedly sought continuances and extensions of time, without once having in brief or otherwise presented a defensible position, or even arguable mitigating circumstances. Nor has he answered the questions posed to him and noted in the preceding paragraph.
The discipline imposed in a particular case depends on the seriousness of the offense, the circumstances of offense, and the extent of aggravating and mitigating circumstances. Louisiana State Bar Association v. Whiting, 425 So.2d 725, 726 (La.1983), Louisiana State Bar Association v. O'Halloran, 412 So.2d 523, 525 (La.1982), Louisiana State Bar Association v. Bensabat, 378 So.2d 380, 382 (La. 1979). The Committee bears the burden of proving any aggravating circumstances, and the respondent has the responsibility of proving mitigating circumstances in his favor. Louisiana State Bar Association v. O'Halloran, 412 So.2d at 525. In mitigation, the Commissioner found that Succession of Henry G. Barthel was concluded subsequent to the Commissioner's hearing. She also noted that the successions were all family successions and that for two of them Hinrichs received little or no compensation for his services. Respondent offered other extenuating circumstances in his family and personal life, including the death and illness of family members.
On the other hand, there are aggravating factors. As a result of another complaint, Hinrichs is currently under a two year suspension on an unrelated matter. *947 Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986). In that case, this Court found that "Hinrichs has been practicing law for thirty-two years, and has been the subject of at least sixteen prior complaints to the bar association four of these complaints resulted in public or private reprimands." Id. at 123. Hinrichs has continuously refused to conclude two of the successions which are involved in this disciplinary proceeding despite complaints from the heirs, and the institution of these proceedings. He has never explained to the Committee or to this Court his procrastination in accounting for the successions' assets. He has never filed a brief. It is of course true that Respondent is not required to disprove his guilt. At the least, however, he should by way of explanation attempt to prove mitigating factors. And in all events, he has an obligation to have the Hinrichs sisters' succession proceedings concluded and the heirs placed in possession of the remaining assets. There is no indication that this has been done. The charges in the case are serious.
Under all the circumstances, we determine that the appropriate discipline which we impose in this case is suspension for one year, but to run successively to respondent's present suspension, which concludes on April 14, 1988. The suspension, however, will continue indefinitely beyond April 14, 1989, unless and until Respondent produces proof satisfactory to the Committee, and this Court, that he has caused the Hinrichs sisters' successions to be concluded and the heirs to be placed in possession of remaining assets.

Decree
For the reasons assigned it is orderd, adjudged and decreed that Respondent is suspended from the practice of law in Louisiana for a period of one year, commencing on April 14, 1988, the date to which he has already been suspended in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986). The suspension is to continue indefinitely beyond April 14, 1989, unless and until Respondent produces proof satisfactory to the Committee, and this Court, that he has caused the Amy Hinrichs and May Hinrichs successions to be concluded and the heirs to be placed in possession of remaining assets. However, Respondent's suspension notwithstanding, Respondent will be permitted to appear as counsel in any court in this state for the sole purpose of concluding the Successions of Amy H. Hinrichs and May E. Hinrichs.
ATTORNEY SUSPENDED FOR ONE ADDITIONAL YEAR.
LEMMON, J., concurs.
NOTES
[1] Specification No. 1 alleges that Hinrichs was retained to handle the Succession of Henry G. Barthel on June 9, 1975, and that despite "repeated demands, efforts and communications [Hinricks] failed, neglected, and refused to close the succession in violation of Disciplinary Rules 1-102 and 6-101(A)(3) and 7-101(A)(2)."

Specification No. 2 alleges that, in connection with his handling of the Succession of Henry G. Barthel, "despite repeated efforts, demands, and communications [Hinrichs] failed, refused, and neglected to make a proper accounting of the funds, securities, or other properties" in violation of Disciplinary Rules 1-102, 6-101(A)(3), 7-101(A)(2), and 9-102(B)(3)-(4).
Specification No. 3 alleges that Hinrichs was retained to handle the Successions of May E. Hinrichs, who died in April, 1973, and Amy H. Hinrichs, who died in October, 1975, and that "despite repeated efforts, demands, and communications [Hinricks] failed, refused, and neglected to close said successions in violation of Disciplinary Rules 1-102 and 6-101(A)(3) and 7-101(A)(2)."
Specification No. 4 alleges that, in connection with his handling of the Successions of May E. Hinrichs and Amy H. Hinrichs, "despite repeated efforts, demands, and communications [Hinrichs] failed, refused, and neglected to make a proper accounting of funds, securities, or other properties in violation of Disciplinary Rules 1-102, DR 6-101(A)(3), DR 7-101(A)(2) and DR 9-102(B)(3)-(4)."
[2] The May Hinrichs succession assets included a half interest in a $25,000 house and additional assets in the amount of $6,558. The legatees were placed in possession of their respective interests in the house by a Judgment of Possession. Although there still may not have been an accounting of the other assets, a Tableau of Distribution, or a Judgment of Possession filed in the succession, the assets and debts were fairly equal. It is not at all clear from the record that the heirs have been denied any money to which they are entitled.

In the Succession of Amy Hinrichs, nothing has been filed after the order of August 31, 1984, permitting Ruth W. Ewing to resign as administratrix upon her filing a Final Account, to be prepared by Respondent. No Final Account, Tableau of Distribution, or Judgment of Possession appears in the certified copy of the succession proceedings of Civil District Court which are filed in this record. There is, however, among the documents which Respondent filed with the Commissioner, a Tableau of Distribution which Respondent may have intended to file in 1977. That Tableau reflects marshalled funds, disbursements, and proposed disbursements (for privileged debts, expenses of the last illness, and ordinary debts), with a balance to be held by the administratrix of $1,577.
[3] The administratrix for the successions, an elderly relative of the deceaseds, resigned, or attempted to do so. Hinrichs maintains the financial records for the successions.
[4] DR 1-102 states:

DR 1-102 Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
[5] DR 6-101(A)(3) states:

DR 6-101 Failing to Act Competently.
(A) A lawyer shall not:
* * * * * *
(3) Neglect a legal matter entrusted to him.
[6] DR 7-101(A)(2) states:

DR7-101 Representing a Client Zeolously
(A) A lawyer shall not intentionally:
* * * * * *
(2) Fail to carry out a contract of employment entered into with a client for professional services.
[7] DR 9-102(B)(3)-(4) states:

DR 9-102 Preserving Identity of Funds and Property of a Client.
* * * * * *
B. A lawyer shall:
* * * * * *
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.